

# NUMBER 13-11-00772-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

KORI J. MARRA,                                                            Appellant,

v.

THE STATE OF TEXAS,                                                      Appellee.

## On appeal from the County Court at Law No. 3
## of Cameron County, Texas.

## OPINION

### Before Justices Rodriguez, Garza, and Perkes
### Opinion by Justice Rodriguez

On the Court's own motion, we withdraw the opinion and judgment issued in this case on March 14, 2013, and substitute this opinion and judgment.

Appellant Kori J. Marra, a former City of Harlingen commissioner, challenges her class A misdemeanor conviction for participating in a vote or decision on a matter that had

a special economic effect on an entity in which she had a substantial interest without first filing an affidavit stating the nature and extent of her interest in the entity, as is required by sections 171.003 and 171.004 of the local government code,. *See* TEX. LOC. GOV'T CODE ANN. §§ 171.003(a)(1), (b), 171.004(a)(1) (West 2008). By three issues, Marra argues that: (1) there was no evidence of a special effect or that she actually participated in a decision on the relevant matter; (2) she was egregiously harmed by an erroneous jury charge that contained permissive instead of mandatory language regarding the finding of special economic effect; and (3) the trial court erred in admitting evidence that violated Marra's attorney-client privilege. We reverse and render a judgment of acquittal.

## I. Background

The following facts are undisputed. Marra is the owner of a real estate business in downtown Harlingen and a former Harlingen city commissioner. At the September 1, 2010 city commission meeting, Marra participated in a discussion regarding the renewal of the Harlingen downtown development district. The development district was formed in the 1980s to promote the revitalization of the downtown area and requires renewal every five years. Renewal is initiated by a petition of fifty percent of the downtown business owners, who affirm that they are willing to be taxed an extra percentage of their property value in order to be eligible for grants from the city to improve their businesses. At the September 1, 2010 meeting, Marra stated that, as a downtown business owner, she supported the renewal of the development district. Another city commissioner expressed concern that Marra's participation in the discussion was a conflict of interest. No vote on the renewal petition was taken at this meeting. The renewal of the

2

development district was not approved until the September 15, 2010 commission meeting; Marra did not attend this meeting or otherwise participate in the vote on the renewal. Before the approval of the district, Marra did not file an affidavit stating the nature of her interest in her business that would be benefited by the commission's approval.

Marra was charged by information as follows:

[O]n or about [September 1, 2010], . . . [Marra] . . . did then and there, knowingly fail to file[,] before a decision on the matter at hand was made, AN AFFIDAVIT WITH THE CITY OF HARLINGEN CITY SECRETARY STATING THE NATURE AND EXTENT[] of . . . [Marra]'s INTEREST IN 2405 and 2407 TREASURE HILLS COURT, L.L.C., a business entity in which she had a substantial interest[,] and knowingly fail to abstain from further participation in the decision at hand to wit; to REAUTHORIZE A PUBLIC IMPROVEMENT ASSESSMENT DISTRICT, when such action on the matter . . . would have a special economic effect on 2405 and 2407 Treasure Hills Court, L.L.C. that would be distinguishable from the effect on the public . . . .

*See id.* § 171.004(a)(1). Marra was also charged by information under section 171.004(a)(2), which prohibits a local public official's participation in a matter that is "reasonably foreseeable" to have a "special economic effect on the value" of real property in which the official has a "substantial interest." *See id.* § 171.004(a)(2). The real property alleged in the information to be affected by Marra's participation in the September 1, 2010 meeting was also "2405 and 2407 Treasure Hills Court, LLC."

Marra pleaded not guilty to both charged offenses, and her case was tried to a jury. The jury found Marra guilty of the business-entity offense under section 171.004(a)(1), but acquitted her of the real-property offense under section 171.004(a)(2). The trial court then sentenced her to thirty days' confinement in county jail and assessed a $500 fine and court costs. This appeal followed.

3

## II.  Discussion

By her first issue, Marra challenges the sufficiency of the evidence supporting her conviction.  Specifically, Marra argues that the business entity named in the information—"2405 and 2407 Treasure Hills Court, LLC"—was, in actuality, not the downtown real estate business that the evidence at trial showed would have benefited from renewal of the downtown public improvement district.  It is undisputed Marra's downtown real estate business was named "Taubert-Marra, LLC."[1]  Marra argues that this created a material variance between the information and proof that rendered the evidence at trial insufficient to support her conviction.[2]  We agree.

Under Texas law, a variance between the allegations in the indictment and the evidence at trial is a matter of evidentiary sufficiency.  *Gollihar v. State*, 46 S.W.3d 243, 246–47 (Tex. Crim. App. 2001).  In reviewing the sufficiency of the evidence, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also Geick v. State*, 349 S.W.3d 542, 545 (Tex. Crim. App. 2011); *Cada v. State*, 334 S.W.3d 766, 772 (Tex. Crim. App. 2011).

To determine what "the essential elements of the crime" are, we look to "the

---

[1]  It is undisputed that 2405 and 2407 Treasure Hills Court, LLC is also owned by Marra and is the entity that owned the building in which Marra's real estate business is located.

[2]  Marra further challenges the evidence supporting the special economic benefit element of the offense by arguing that:  (1) the statute requires the business entity to receive a present and certain economic benefit and that renewal of the development district would have given Marra, at most, a speculative or contingent economic benefit; and (2) the renewal's benefit to Marra's business entity would have been no different than the benefit to the public.  Finally, Marra argues that the evidence was insufficient to support her conviction because there was no evidence that she actually participated in a decision on the relevant matter.

hypothetically correct jury charge for the case."  A hypothetically correct jury charge "would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried."

*Geick*, 349 S.W.3d at 545 (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).

The statute under which Marra was convicted provides, in relevant part, as follows:

If a local public official has a substantial interest in a business entity . . . , the official shall file, before a vote or decision on any matter involving the business entity . . . , an affidavit stating the nature and extent of the interest and shall abstain from further participation in the matter if . . . the action on the matter will have a special economic effect on the business entity that is distinguishable from the effect on the public.[3]

TEX. LOC. GOV'T CODE ANN. § 171.004(a)(1).  Thus, a local public official[4] commits an offense if, (1) before a vote or decision on a matter involving a business entity (2) in which the official has a substantial interest,[5] (3) she fails to file an affidavit stating the nature and extent of her interest in the business entity and (4) fails to abstain from further participation in the matter (5) where action on the matter will have a special economic effect on the business entity that is distinguishable from the effect on the public.  *Id.*

The law "as authorized by the indictment" means "the statutory elements of the offense . . . as modified by the charging instrument."  *Johnson v. State*, 364 S.W.3d 292, 294 (Tex. Crim. App. 2012) (citations omitted).  A hypothetically correct jury charge need not necessarily track exactly all of the allegations in the charging instrument.  *Id.*

---

[3] Section 171.003 makes a knowing violation of the foregoing a class A misdemeanor.  TEX. LOC. GOV'T CODE ANN. § 171.003(a)(1), (b) (West 2008).

[4] It is undisputed that Marra was a local public official.

[5] It is also undisputed that Marra had a substantial interest in 2405 and 2407 Treasure Hills Court, LLC, the business entity named in the information.

5

(citations omitted). "[W]hen faced with a sufficiency of the evidence claim based upon a variance between the indictment and the proof, only a 'material' variance will render the evidence insufficient." *Gollihar*, 46 S.W.3d at 257. A variance is material, or "fatal[,] only if it . . . prejudices [the defendant's] substantial rights." *Id.* (citations omitted). A defendant's substantial rights are not prejudiced so long as "the indictment, as written, informed the defendant of the charge against him sufficiently to allow him to prepare an adequate defense at trial" and "the deficiently drafted indictment would [not] subject the defendant to the risk of being prosecuted later for the same crime." *Id.* (citations omitted). "[A] hypothetically correct charge need not incorporate allegations that give rise to immaterial variances." *Id.* at 256.

"A variance in pleading and proof can occur in two different ways. First, a variance can involve the statutory language that defines the offense. . . . Second, a variance can involve a non-statutory allegation that is descriptive of the offense in some way." *Johnson*, 364 S.W.3d at 294. With regard to the first type of variance, "the failure to prove the [pleaded] statutory language . . . [always] renders the evidence legally insufficient to support the conviction"; in other words, "a variance of this sort is always material." *Id.* at 295; *see also Cada*, 334 S.W.3d at 774 ("The Texas 'immaterial variance' law as set out in *Gollihar* does not apply to the specific statutory elements alleged in the indictment." (internal quotation omitted)). With regard to the second type of variance,

> we tolerate some variation in pleading and proof. We tolerate "little mistakes" that do not prejudice the defendant's substantial rights but we will not tolerate a variance that really amounts to a failure to prove the offense alleged. What is essential about variances with respect to non-statutory allegations is that the variance should not be so great that the proof at trial

6

"shows an entirely different offense" than what was alleged in the charging instrument.

*Johnson*, 364 S.W.3d at 295 (citations omitted); *see also Fuller v. State*, 73 S.W.3d 250, 256 (Tex. Crim. App. 2002) (Keller, J., concurring) ("[While t]he State may not be bound by overly descriptive indictment allegations, . . . the hypothetically correct jury charge cannot be invoked to 'wholly re-write the indictment to charge a different offense.'" (quoting *Gollihar*, 46 S.W.3d at 253)).

The first question for this Court is whether the identity of the business entity is statutory language or a non-statutory allegation that is descriptive of the offense in some way. We believe it is the latter. Although the term "business entity" is included in section 171.004's statutory language, the identity of the business is not. Nonetheless, as discussed below, it is a relevant non-statutory fact, and the second question for the Court is therefore whether a variance involving that fact is material.

In analyzing whether variances involving non-statutory allegations are material, we focus on the allowable unit of prosecution and are guided primarily by whether a defendant's double jeopardy interests are implicated. *See Johnson*, 364 S.W.3d at 295–96; *Fuller*, 73 S.W.3d at 257. Where a non-statutory allegation "defines an allowable unit of prosecution" and a defendant is indicted for that one allowable unit but the State proves another allowable unit, "protecting the defendant's double jeopardy rights requires acquitting the defendant" of the proved, but non-indicted, offense. *Fuller*, 73 S.W.3d at 257; *see Byrd v. State*, 336 S.W.3d 242, 246–47 (Tex. Crim. App. 2011) (reasoning that "the defendant is entitled to an acquittal" where the State alleges one offense and proves another). "After such an acquittal, the State could seek an

7

indictment alleging [the offense involving the non-indicted allowable unit]. Acquittal as a remedy for [this type of variance] protects the defendant's double jeopardy interests while also allowing the State an opportunity to prosecute for the 'correct' theory of the crime." *Fuller*, 73 S.W.3d at 257; *see Byrd*, 336 S.W.3d at 247.

To that end, we determine the "allowable unit of prosecution" of a particular offense by "ascertain[ing] the focus or gravamen of the offense." *Johnson*, 364 S.W.3d at 296 (citing *Huffman v. State*, 267 S.W.3d 902, 907 (Tex. Crim. App. 2008)).

> If the focus of the offense is the result—that is, the offense is a "result of conduct" crime—then different types of results are considered to be separate offenses, but different types of conduct are not. On the other hand, if the focus of the offense is the conduct—that is, the offense is a "nature of conduct" crime—then different types of conduct are considered to be separate offenses. . . . If "circumstances surrounding the conduct" is the focus of the offense, then under a focus-based approach to determining separateness of offenses, different types of conduct could establish alternate methods of committing the same offense rather than different offenses, so long as the circumstances surrounding the conduct are the same.

*Huffman*, 267 S.W.3d at 907 (internal citations and quotations omitted). In other words, in the latter example, the "circumstances" form the allowable unit of prosecution. *See id.* at 908.

The proscribed conduct in this statute—i.e., the failure to file an affidavit and abstain from further participation—would not necessarily be criminal absent the circumstances specified by the statute—i.e., the local official's substantial interest in the business entity that will be economically affected by the matter at hand. *See* TEX. LOC. GOV'T CODE ANN. § 171.004(a)(1). We therefore conclude that section 171.004 is a "circumstances surrounding conduct" offense and that the relevant circumstances that form the gravamen of the offense are the official's ownership of the particular business

entity that is alleged to receive a special economic benefit. *See Huffman*, 267 S.W.3d at 908 (reasoning that the failure to stop and render aid offense is a "circumstances surrounding conduct offense" because a defendant's "failure to stop, return, or remain becomes criminal only because of his knowledge of circumstances surrounding the conduct: an accident and a victim suffering an injury"). Although the identity of the business entity is not statutory language, *see Johnson*, 364 S.W.3d at 294, it is a non-statutory fact that embodies the allowable unit of prosecution for this offense. *See id.* at 296; *Huffman*, 267 S.W.3d at 907. Because the identity of the business entity comprises the very nature of the offense, the hypothetically correct jury charge for an offense under section 171.004(a)(1) must include the name of the business entity alleged in the information or indictment to have been affected by the local official's participation in a matter.[6] *See Geick*, 349 S.W.3d at 545; *see also Johnson*, 364 S.W. at 294; *Gollihar*, 46 S.W.3d at 257. And if the proof at trial concerns a different business entity than the entity named in the indictment, the State has proven a different crime than the one alleged. This implicates the defendant's double jeopardy rights; a subsequent prosecution involving the indicted business entity would not be barred because the proof at trial involved an entirely different entity and, therefore, an entirely different offense. *See Byrd*, 336 S.W.3d 256–57 (holding that, where both ownership and appropriation constitute the gravamen of theft, the State's proof at trial of a different owner than one alleged in the indictment rendered the evidence insufficient to support the conviction, but did not bar re-prosecution because "proof of one [owner] will not prove the other" and

---

[6] *Compare Johnson v. State*, 364 S.W.3d 292, 295–96 (Tex. Crim. App. 2012) (reasoning that because the victim is the allowable unit of prosecution for murder, "the State must prove that the victim alleged in the indictment is the same person as the victim proved at trial").

9

"[t]hus, the offenses are not the same for double jeopardy purposes"). In short, a variance between the identity of the business entity alleged and the identity of the business entity proved is material and requires acquittal.

In this case, the State does not dispute that the evidence at Marra's trial concerned a different business entity than the entity pled in the information. The State's proof at trial in support of its charges under section 171.004(a)(1) involved the Taubert-Marra, LLC business entity that owned Marra's downtown real estate business. The State produced no evidence that 2405 and 2407 Treasure Hills Court, LLC—the entity that owned the real property in which the real estate business was located and which was the real property involved in the State's separate charge against Marra under section 171.004(a)(2)—was the business entity that would have received the special economic benefit. Because Marra's ownership of a particular business entity is the allowable unit of prosecution for this offense, the State proved an entirely different offense by proving that Taubert-Marra, LLC would be the entity that was affected by Marra's participation in the discussion on renewal of the downtown development district. This was not a "little mistake." It was a failure to prove the offense alleged in the information. And it was material because it does not bar the State from prosecuting Marra a second time for the same offense. Under Texas law, as discussed above, Marra could be reindicted and tried for an offense involving Taubert-Marra, LLC, as she was never placed in jeopardy for such an offense. *See Byrd*, 336 S.W.3d at 247; *see also Fuller*, 73 S.W.3d at 257.

For these reasons, we hold the material variance between the information and proof in this case rendered the evidence legally insufficient to support Marra's conviction. *See Gollihar*, 46 S.W.3d at 246–47; *see also Jackson*, 443 U.S. at 319. We sustain

Marra's first issue in this regard.[7]

### III.  Conclusion

We reverse the judgment of the trial court and render a judgment of acquittal.


NELDA V. RODRIGUEZ
Justice

Publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
4th day of April, 2013.

---

[7] Having ruled that the evidence was insufficient because of the material variance, we need not reach Marra's further sufficiency arguments regarding the evidence of a special economic effect or the evidence of whether she actually participated in a decision on the relevant matter.  *See* TEX. R. APP. P. 47.1.  And because our holding regarding the variance is dispositive of the appeal, we also need not reach Marra's issues involving the jury charge and the admission of evidence barred by the attorney-client privilege.  *See id.*

11